UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | | |
|---|---|---|
| JOHN T. JONES, JR., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3:18-CV-572-CHB |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| MARK BOLTON, et al., | ) | **ORDER** |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on a Motion for Summary Judgment [R. 23] filed by Defendants Mark Bolton and Samuel Whitlow. Plaintiff John T. Jones Jr. was an inmate confined at Louisville Metro Department of Corrections who since filing his Complaint has been released from custody. [R. 21] Proceeding without counsel, Jones filed a civil rights complaint, which the Court construed as asserting claims under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1, and 42 U.S.C. § 1983 for violations of his rights under the First Amendment. [R. 8 p. 1] Defendants filed a Motion for Summary Judgment. [R. 23] When prompted to file a response by the Court [R. 36], Jones submitted a letter [R. 37] indicating that another letter submitted by his fiancé, Meredith Robinson [R. 34] was his Response. No reply was filed within the deadlines provided by Local Rule 7.1. Thus, this matter is ripe for review. For the reasons set forth below, the Court will grant Defendants' Motion for Summary Judgment [R. 23] and dismiss Jones's claims.

1

## I. Factual Background

On August 27, 2018, Plaintiff John T. Jones Jr. ("Jones") filed a Complaint against Mark Bolton ("Bolton"), the director at Louisville Metro Department of Corrections ("LMDC"), and Samuel Whitlow ("Whitlow"), the chaplain at LMDC (collectively "Defendants") in both their individual and official capacities. [R. 1 p. 2] Jones is Muslim, which he claims LMDC has known since 2007. [R. 1 p. 4] Jones claims that Defendants discriminated against his "right to freedom of religious practice" on two occasions. [*Id.*] While the Complaint did not have any specific claims listed, the Court construed it as raising claims under the First Amendment pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1. [R. 8] Jones seeks an injunction to force Defendants to "follow[] correct policy on religion," and money damages in the amount of $1,000,000.00 [R. 1 p. 6] On January 25, 2019, Jones was transferred from LMDC to the Webster County Jail [R. 12], and on April 15, 2019, Jones wrote to the Court to indicate that he was no longer incarcerated, providing an updated residential address. [R. 21]

Jones first claims that Defendants discriminated against him by not providing a double portion of dinner after sundown during the month of Ramadan. [R. 1 p. 4] Jones says he was incarcerated during Ramadan "in the past 2007, 2008, 2009, 2011, 2012, 2013, 2014, 2015, and am very familiar with the policy and how Ramadan is handled within the jail and prison systems." [*Id.*] He alleges that "[p]reviously we have received . . . a double portion dinner tray after sundown," and that Chaplain Whitlow changed this policy to only provide a single portion of dinner during Ramadan. [*Id.*] Jones claims he "filed several informal grievance[s] with the different guards on each shift and was advised that I needed to speak with Chaplain Whitlow about the Ramadan policies." [*Id.*] Jones then filed a formal grievance on May 21, 2018, in

which he argued that he was being discriminated against because he was not being provided three meals per day. [*Id.* pp. 4–5; R. 20-1 p. 3] Jones received a response stating that "Ramadan participants will not receive extra trays or double portions. Ramadan participants will receive a meal before sunrise and a meal after sunset, therefore they will only receive 2 meals during Ramadan and not 3." [R. 20-1 p. 2] Jones filed a second formal grievance on May 29, 2018, in which he asked again why he was not being provided with a double portion during dinner, and inquiring as to whose decision it was to "change protocol on how to feed Muslium's [sic] during Ramadan." [R. 20-1 p. 1] This time, Jones received a written response from the grievance counselor Meka Wingate which stated that "Chaplain Whitlow made the decision. Decision was approved by Director Bolton and all other deputy directors and chief of staff." [R. 20-1 p. 1] Wingate also met with Jones and informed him of this decision. [R. 23-5 p. 1] According to Jones, his fiancé called LMDC on June 12, 2018, and spoke with Chaplain Whitlow about the dinner portions. [R. 1 p. 5] She claims that Whitlow informed her that they changed their policy of providing double meals at dinner for Muslim inmates during Ramadan because they could no longer keep track of who was genuinely Muslim and who was pretending to be just to receive double food portions.[1] [*Id.*; R. 34 p. 1] However, Jones did not appeal the outcome of either of his grievances. [R. 23-5 p. 1 ¶ 5]

Jones next claims that Defendants prevented him from participating in Eid al-Fitr, the festival of breaking the fast that marks the end of Ramadan, which traditionally involves a feast. [R. 1 p. 4; R. 20] Jones was in single segregation at the time but argues that if he was not allowed to participate in the celebration, he should have at least been brought a tray from the feast. [*Id.*] LMDC's Departmental Policy provides that inmates shall have the opportunity to

---

[1] Defendants deny that they changed any meal policy at LMDC [R. 23-1 p. 3; 23-3 p. 1 ¶¶ 3–5] but concede that for purposes of summary judgment this factual dispute must be taken as true. [R. 23-1 p. 3]

3

participate in their religious practices that are deemed essential by the faith's judicatory, to be limited only by documentation showing a threat to safety. [R. 23-2 p. 2] In his sworn affidavit, Chaplain Whitlow indicates that since Jones was in single segregation during Ramadan in 2018, he would not have been allowed to participate in the Eid al-Fitr feast due to safety concerns, but that a tray would have been taken to him in his cell. [R. 23-3 pp. 1–2 ¶ 6] Jones contends that he did not receive this tray. [R. 1 p. 4; R. 20] However, Defendants claim that Jones did not file a formal grievance regarding this incident [R. 23-1 p. 2–3; R. 23-2 p. 2; R. 23-5 p. 1] and there is nothing in the record indicating otherwise. Therefore, Defendants claim, Jones failed to exhaust his administrative remedies and they also had no reason to know of any potential oversight on this occasion. [R. 23-1 p. 3] In their Motion for Summary Judgment [R. 23] Defendants argue that Jones's claims should be dismissed because: (1) Defendants are entitled to qualified immunity, (2) Jones failed to exhaust his administrative remedies, and (3) the claims fail as a matter of law.

## II. Standard of Review

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When determining a motion for summary judgment, a court must construe the evidence and draw all reasonable inferences from the underlying facts in favor of the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Lindsay v. Yates,* 578 F.3d 407, 414 (6th Cir. 2009). The Court may not "weigh the evidence and determine the truth of the matter" at the summary judgment stage. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 265 (1986). When, as here, the defendant moves for summary judgment, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there

must be evidence on which the jury could reasonably find for the plaintiff." *Id*. at 252. The initial burden of establishing no genuine dispute of material fact rests with the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Court "need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). If the moving party satisfies this burden, the burden then shifts to the nonmoving party to produce "specific facts" showing a "genuine issue" for trial. *Id.* at 324. Where "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the Court may treat that fact as undisputed. Fed. R. Civ. P. 56(e).

A fact is "material" if the underlying substantive law identifies the fact as critical. *Anderson*, 477 U.S. at 248. Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* A "genuine" issue exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249.

### III. Discussion

#### A. Injunctive Relief

As Plaintiff has not only been transferred from LMDC, but also released from prison entirely, his claims for injunctive relief to force LMDC to follow a different policy regarding Ramadan are moot. "[T]he test for mootness is whether the relief sought would, if granted, make a difference to the legal interests of the parties." *Sullivan v. Benningfield*, 920 F.3d 401, 410 (6th Cir. 2019) (quoting *McPherson v. Mich. High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 458 (6th Cir. 1997) (en banc)). When an inmate brings claims against prison officials at the facility where he is incarcerated seeking injunctive relief and that inmate is subsequently transferred or

released, courts frequently dismiss the claims for injunctive relief as moot. *See Sossamon v. Texas*, 563 U.S. 277, 304 (2011); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *see also Lowe v. Oppy*, No. 2:14-CV-535, 2015 WL 1439345, at *2 (S.D. Ohio, Feb. 10, 2015) (collecting Sixth Circuit cases). First, Jones was transferred to Webster County Jail on January 24, 2019, and thus not subject to the LMDC policies. [R. 12] Even further, Jones was released from Webster County Jail on April 4, 2019. [R. 20] Since Jones is no longer subject to the Ramadan policies of LMDC, his claims for injunctive relief are moot and are denied as such.

### B. RLUIPA Damages Claims

The Court next considers Plaintiff's claims for damages under RUILPA. Jones has filed suit against Defendants in their official and individual capacity. [R. 1 p. 6] The Supreme Court has held that RLUIPA does not provide money damages against state prison officials when sued in their official capacity. *Sossamon v. Texas*, 563 U.S. 277, 280 (2011). The Sixth Circuit subsequently held that it does not provide money damages against such officials when sued in their individual capacities either. *Haight v. Thompson*, 763 F.3d 554, 570 (6th Cir. 2014). Plaintiff's claim for money damages under RLUIPA are therefore dismissed as well.

### C. First Amendment Claims for Damages Pursuant to § 1983

#### i. Official Capacity

Finally, the Court turns to Plaintiff's claims under 42 U.S.C. § 1983, in which Plaintiff claims that Defendants violated his rights under the First Amendment. Again, Plaintiff's claims are against Defendants in their official and individual capacity. [R. 1 p. 6] An "official capacity" claim against a state officer is, as a matter of law, a claim directly against the employing state agency. *Lambert v. Hartman*, 517 F.3d 433, 439–40 (6th Cir. 2008); *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) ("While personal-capacity suits seek to impose personal liability upon a

government official for actions he takes under color of state law, individuals sued in their official capacities stand in the shoes of the entity they represent." (internal quotation marks omitted)). Jones's official capacity claims are therefore civil rights claims against LMDC. However, LMDC is not subject to suit under § 1983, both because a state agency is not a "person" subject to liability under Section 1983, and because the "Eleventh Amendment bars § 1983 suits against a state, its agencies, and its officials sued in their official capacities for damages." *Cady v. Arenac Cty.*, 574 F.3d 334, 342 (6th Cir. 2009); *see Will v. Mich. Dept. of State Police*, 109 S. Ct. 2304, 2312 (1989) ("[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983."). The Court therefore dismisses all § 1983 official capacity claims.

### ii. Individual Capacity

With Jones's claims for injunctive relief mooted, his claims for damages under RLUIPA dismissed, and claims against Defendants in their official capacity dismissed, the Court addresses his final claim: one for money damages pursuant to 42 U.S.C. § 1983 for a violation of his First Amendment rights against Defendants in their individual capacity. Defendants argue that Jones's claims should be dismissed because (1) Defendants are entitled to qualified immunity, (2) Jones failed to exhaust his administrative remedies, and (3) the claims fail as a matter of law. [R. 23-1 p. 9]

Defendants first argue that Jones's claims should be dismissed because he failed to exhaust his administrative remedies by (1) failing to appeal his two grievances regarding double meal portions, and (2) not filing a grievance at all to inform prison staff about failing to receive a tray for Eid al-Fitr. The Prison Litigation Reform Act ("PLRA") bars civil rights actions regarding prison conditions until the prisoner exhausts all available administrative remedies. 42 U.S.C. § 1997e(a); *see also Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that

7

exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). This requirement provides prison staff with the opportunity to address complaints internally before being forced to defend a civil suit, reduces the number of inmate suits, and creates an administrative record for the Court for the suits that do go forward. *Bock*, 549 U.S. at 204. "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust,'" but the prison's requirements define the boundaries of proper exhaustion. *Id.* at 218. Failure to exhaust administrative remedies is an affirmative defense, and Defendants bear the burden of proving that Jones failed to exhausted his administrative remedies. *Surles v. Andison*, 678 F.3d 452, 456 (6th Cir. 2012).

Departmental Policy 03-5.02 describes LMDC's grievance process. [R. 39-1] To exhaust administrative remedies according to Departmental Policy 03-5.02, an inmate must accomplish the following steps: (1) file a written grievance within five working days of the incident; (2) attempt to resolve the problem "through informal resolution means," which "may involve the Grievance Counselor, department head or facility staff;" (3) after receiving a response, decide within five working days whether to appeal to the next level or, if a response is not received within 45 days, proceed to the next level of review; (4) "[i]f the grievant is not satisfied with the outcome of the resolution response, they may appeal in writing to the Director/designee within five . . . working days after receipt of the resolution response." [R. 39-1 pp. 4–6] Essentially, prisoners must file a grievance, attempt to resolve the problem with facility staff informally, and then appeal in writing to the director if they are still unsatisfied.

In her affidavit, Inmate Grievance Counselor Wingate provides that Jones failed to appeal the outcome of his two formal grievances regarding meal portions. [R. 23-5 p. 1 ¶ 5] Chaplain Whitlow states in his sworn affidavit that Jones did not file a grievance relating to missing the

8

2018 Eid al-Fitr feast, and thus Chaplain Whitlow unaware of whether a tray was brought to him while he was in single segregation. [R. 23-3 p. 2 ¶ 7] Jones has not contested either of these claims in any way. If a Defendant fails to address another party's assertion of fact at the summary judgment stage, the Court may consider the fact undisputed for purposes of the motion. Fed. R. Civ. P. 56(e)(2). The Court finds it appropriate to do so in this case and finds that Jones failed to exhaust his administrative remedies as required by LMDC Departmental Policy 03-5.02.

Even if Jones had exhausted his administrative remedies regarding double meal portions, his claims fail. Defendants argue that they are entitled to qualified immunity and that Jones's claims fail on their merits since he has failed to show any constitutional violation occurred at all. To be entitled to qualified immunity, the Court must determine whether a constitutional violation occurred—in other words, evaluate the merits of the claim. *Colvin v. Caruso*, 605 F.3d 282, 290 (6th Cir. 2010). As such, Defendants' merits argument will be addressed simultaneously with their qualified immunity defense.

"A two-part test is used to determined whether qualified immunity applies: (1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established." *Id.* (internal quotations omitted). A constitutional right is clearly established if the "contours of the right [are] sufficiently clear that a reasonable government official would understand that what he is doing violates that right." *Id.* (quoting *Harris v. City of Circleville*, 583 F.3dd 356, 366–67 (6th Cir. 2009). Moreover, the right itself must be defined with "specificity," rather than a "high level of generality." *City of Escondido, Cal. v. Emmons*, 139 S. Ct. 500, 503 (2019). Qualified immunity is an affirmative defense not only against liability, but against the suit itself. *Reilly v. Vadlamudi*, 680 F.3d 617, 623 (6th Cir. 2012). It is Jones's burden to show that Defendants are not entitled

9

to qualified immunity. *Id.* At the summary judgment stage, this burden can be met by offering facts that could reasonably support a finding that defendants violated a clearly established constitutional right. *Hermansen v. Thompson*, 678 F. App'x 321, 325 (6th Cir. 2017).

Jones claims that Defendants violated his constitutional rights by failing to provide him with two meals for dinner instead of one during Ramadan and by failing to provide him a tray from the Eid al-Fitr feast. [R. 1 p. 4] Jones's Response to Defendants' Motion for Summary Judgment [R. 34; 37] addresses none of Defendants' legal arguments. Instead, it contains a signed letter from Meredith Robinson that details the alleged conversation she had with Chaplain Whitlow where Whitlow allegedly told her he changed the meals policy because they could not determine who was actually Muslim and who was pretending to be to receive double meal portions. [R. 34] The Response also includes two different documents that appear to be from unknown prison policies. [R. 34-1 pp. 1–2] The source of these policies is entirely unclear (they do not even appear to be from the same source) and Plaintiff provides no explanation for their relevance other than highlighting two provisions. [*Id.*] The first highlighted section merely states that "the department" shall provide inmates the opportunity to satisfy minimum dietary requirements. [R. 34-1 p. 1] The second highlighted section provides information regarding Eid al-Fitr, including that it is customary to eat before prayer at the end of the Ramadan fast. [*Id.* p. 2] Jones makes no assertion that these are policies of LMDC or how they are applicable in any way. Nor does Jones argue how these policies establish or are even relevant to showing a clearly established constitutional right.

The Court need not even address whether a right was clearly established at the time an official allegedly violated it if "it appears that plaintiff has failed to demonstrate a constitutional violation in the first instance." *Alexander v. Carrick*, 31 F. App'x 176, 179 (6th Cir. 2002) (citing

10

*Siegert v. Gilley*, 500 U.S. 226, 232 (1991)). Such is the case here. There is no constitutional right to receive double portions for dinner during Ramadan. Rather, "prison administrators must provide an adequate diet without violating the inmate's religious dietary restrictions." *Colvin*, 605 F.3d at 290. The Sixth Circuit found that it was a question of fact whether a prison policy which resulted in Ramadan-observing prisoners only receiving 1,300 calories per day was adequate. *Welch v. Spaulding*, 627 F. App'x 479, 482–83 (6th Cir. 2015) (considering the daily caloric content, duration of diet, and nutritional needs of the prisoner when determining whether a prison's Ramadan-meal policy was adequate). In that case plaintiff submitted nutritional charts with estimates of daily caloric intake to show that the policies were in fact inadequate. *Id.* at 484. Jones, by contrast, has submitted nothing other than his own conclusory claims to suggest that the two meals provided to him by LMDC are inadequate in any way. "Conclusory assertions, supported only by Plaintiff's own opinions, cannot withstand a motion for summary judgment." *Arendale v. City of Memphis*, 519 F.3d 587, 605 (6th Cir. 2008). Even when viewing the facts in the light most favorable to Jones, there is nothing in the record whatsoever that would allow a factfinder to find that Defendants violated a constitutional right by only providing him with two meals a day instead of three during Ramadan. Defendants are therefore entitled to qualified immunity for Jones's complaint regarding his meal portions, as no constitutional violation occurred.

The Court need not address whether Jones's claims that he did not receive a tray from the Eit al-Fitr feast infringed upon his constitutional rights. Jones failed to file a formal grievance regarding the issue and has not claimed to even have told anyone about it, meaning that he has clearly failed to exhaust his administrative remedies regarding this claim. This claim will consequently be dismissed without prejudice. *See Bell v. Konteh*, 450 F.3d 651, 652 n.4 (6th Cir.

11

2006) (It is well established . . . that the appropriate disposition of an unexhausted claim under the PLRA is dismissal without prejudice.").

**IT IS HEREBY ORDERED** as follows:

1. Defendants' Motion for Summary Judgment **[R. 23]** is **GRANTED** and Jones's claims are **DISMISSED**.

2. This action is **STRIKEN** from the Court's active docket.

3. The Court will enter a separate Order and Judgment.

This the 14th day of February, 2020.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY